UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CHARLES H.,                         )
                                    )
            Plaintiff               )
                                    )
v.                                  )    No. 2:17-cv-00273-DBH
                                    )
NANCY A. BERRYHILL,                 )
Acting Commissioner of Social Security, )
                                    )
            Defendant               )

## REPORT AND RECOMMENDED DECISION[1]

This Child's Disability Benefits ("CDB") appeal raises the question of whether the administrative law judge ("ALJ") supportably found that the plaintiff was not disabled because he engaged in substantial gainful activity ("SGA") after September 29, 1992, his alleged onset date of disability. The plaintiff seeks remand on the bases that the ALJ failed to develop the record properly and find that the jobs at issue constituted unsuccessful work attempts.[2] *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 15) at 2-7. I agree that the ALJ's finding is unsupported by substantial evidence and, accordingly, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith.

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] In his statement of errors, the plaintiff also argued that, for the years in question, 1997 and 1998, the ALJ improperly averaged his monthly earnings over multiple jobs in determining whether those earnings were at SGA level. *See* Statement of Errors at 7. However, at oral argument, his counsel effectively withdrew that point, stating that there was no dispute that the jobs at issue met the then-applicable SGA earnings threshold of $500 per month. *See* 20 CFR § 404.1574(b)(2)(i)(Table 1).

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found that the plaintiff had not attained age 22 as of September 29, 1992, his alleged onset date of disability, Finding 1, Record at 14; that he had engaged in SGA since the alleged onset date, Finding 2, *id.*; and that he, therefore, had not been disabled at any time prior to December 19, 1993, the date that he attained age 22, Finding 3, *id.* at 15.[3] The Appeals Council declined to review the decision, *id.* at 4-6, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 1 of the sequential evaluation process. At Step 1, the claimant bears the burden of rebutting the presumption that he engaged in SGA based on his earnings. *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 246 (6th Cir. 1996); *see also, e.g.*, *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Gallant v. Astrue*, Civil No. 09-357-P-S, 2010 WL 2927263, at *1 (D. Me. July 20, 2010) (rec. dec., *aff'd* Aug. 10, 2010). At Step 1, "if the applicant is engaged in substantial gainful work activity, the application is denied[.]" *Purdy v. Berryhill*, 887 F.3d 7, 10 (1st Cir. 2018) (citation and internal quotation marks omitted); *see also, e.g.*, 20 C.F.R. § 404.1571.

> Work is considered "substantial" if it "involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). "[W]ork may be substantial

---

[3] Although the plaintiff was born on December 20, 1971, *see* Finding 1, Record at 14, a claimant is deemed to "reach a particular age on the day before [his or her] birthday[,]" 20 C.F.R. § 404.102.

2

> even if it is done on a part-time basis or if [a claimant] do[es] less, get[s] paid less, or [has] less responsibility than when [he or she] worked before." *Id*. "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §§ 404.1572(b), 416.972(b).

*Gallant*, 2010 WL 2927263, at *1.

While a claimant's earnings are "[t]he primary consideration in determining whether particular work constituted [SGA][,]" *Knudsen v. Colvin*, No. 2:14-cv-155-JHR, 2015 WL 1505689, at *9 (D. Me. Apr. 1, 2015), "earnings from an unsuccessful work attempt [UWA] will not show that [a claimant is] able to do [SGA][,]" 20 C.F.R. 404.1574(a)(1). However, work lasting six months or less constitutes a UWA only if, (i) prior to the UWA, there is "a significant break in the continuity of [the claimant's] work[,]" meaning that the claimant was out of work for at least 30 consecutive days or was forced because of his or her impairment to change to another type of work or another employer, and (ii) the claimant "stopped working or . . . reduced [his or her] work and earnings below the [SGA] earnings level because of [his or her] impairment or because of the removal of special conditions" that took the impairment into account and "permitted [the claimant] to work." *Id*. § 404.1574(c)(2).

## I. Discussion

To be entitled to a CDB award on the earnings record of a wage earner, a claimant who is over 18 and not a full-time student must demonstrate that he or she was disabled before he or she turned 22 "and was continuously disabled from the date of [his or] her twenty-second birthday through the date that [he or] she applied for benefits." *Starcevic v. Comm'r of Soc. Sec.,* No. 08-13128, 2009 WL 2222631, at *6 (E D. Mich. July 22, 2009). *See also* 20 C.F.R. § 404.350. The plaintiff applied for CDB on the earnings record of his father in 2010, after his father passed away. *See* Statement of Errors at 1. He alleged that he had suffered a disabling brain injury in a car accident prior to his 22nd birthday, in September 1992. *See* Record at 34.

The ALJ determined that the plaintiff's earnings record showed that he had wages above the SGA threshold in 1997 and 1998, of $6,753 and $5,271, respectively. *See id.* at 14. He noted that the plaintiff reported that he had worked at two jobs (Hudson Trail Outfitters and Johnson[']s Landscaping Service) for approximately seven months in 1997 and, although precise dates were indeterminate and requests to employers received no response, even if he had worked for that entire year, his average earnings from both jobs would have exceeded the $500 monthly SGA threshold. *See id.*; *see also id.* at 24-25. He observed that the plaintiff had also reported work in 1998 for "'3-4 months' at Annie's Discount Cleaners ($3,300.00 earned) and 'about 1½ months' at Kids, Inc. ($1,087.00 earned)[,]" also above the SGA threshold. *Id.* at 14; *see also id.* at 24.

He acknowledged that the plaintiff's counsel had argued that "this activity is an unsuccessful work attempt" but disagreed, explaining:

> First, the record, as just cited, reveals more than 6 months' work activity, while the [plaintiff] also went on to work over several months in 1999 and 2000. Second, there is not substantive evidence to show the [plaintiff] stopped work because of an impairment. For the above cited jobs, [he] reportedly stopped work for reasons unrelated to a severe impairment; i.e. he left Annie's Cleaners because he moved; work at Kids' Inc. was seasonal and ended; he could not make sales' quota at Hudson Outfitters and was in a minor car accident while on the job at Johnson's.
>
> Accordingly, in the absence of objective evidence from the cited employers indicative of unsatisfactory work performance, or the placement of special work conditions related to the [plaintiff's] impairment, I do not find this work constitutes an unsuccessful work attempt.

*Id.* at 15 (citations omitted).

The plaintiff contends that the ALJ failed to develop the record properly when, as to jobs performed in 1997, he "simply rejected the evidence out of hand that [the plaintiff] was not able to sustain ongoing work but without a valid basis for doing so[,]" and, as to jobs performed in 1998, never suggested that he had any concerns that they constituted SGA or elicited testimony from the plaintiff regarding them. Statement of Errors at 2, 5-7.

4

The evidence that the plaintiff argues the ALJ rejected out of hand without good reason includes a May 4, 2015, letter of treating clinical neuropsychologist Mark G. Kiefner, Ph.D. *See id*. at 4, 6. In that letter, Dr. Kiefner indicated that he had seen the plaintiff on "multiple occasions" beginning on March 9, 2010, and stated, in relevant part:

> He was the unbelted passenger in a single vehicle motor vehicle accident in September 1992, at age 20. He was comatose at the scene and when he arrived at the hospital he had a Glasgow Coma Scale of 3. He had a moderate degree of hypoxia; cardiac arrhythmia; left frontal contusion; and diffuse cerebral edema. He was initially treated at the National Rehabilitation Hospital and records indicate that he had significant difficulties with memory, organization, and executive functioning.
>
> During the time that we have known him, [the plaintiff] has continued to demonstrate severe impairments in memory, organization, attention, concentration, and executive functioning. He has, with the best of intentions, made multiple sets of plans for education and employment but has not been able to follow through on any of those. He has received occupational and speech therapies but, overall, I would say that minimal progress has been made. . . .
>
> Based on the Social Security criteria for brain injury disability, following a review of our records, I would say that [the plaintiff] is not grossly disoriented to time or place. However, his ability to manage time and to be aware of time is markedly impaired. For example, he most frequently misses appointments or is late for them. He demonstrates severely impaired working memory, short-term memory, and prospective memory which interferes with his ability to learn information and apply it. He has had a change in personality and thinking which is not frankly psychotic but which does not allow him to appreciate the concerns of most others regarding time management, task completion, following through on promises or commitments, or restraint of impulses. While he is not emotionally labile, he does demonstrate markedly impaired impulse control and is very likely to be susceptible to last-minute influences which can interfere with his ability to attend appointments, follow through on commitments, or go to work. I would say that he has a decrease in his intellectual ability and that on neuropsychological testing he has memory impairments clearly in the severely impaired range. All of these impairments create marked difficulties for him in maintaining social functioning in relationships. They also create deficiencies and [sic] concentration, persistence, and pace which have resulted in frequent failure to follow through on tasks; complete tasks in a timely manner; and follow through on commitments . . . if he were to recall them. During the course of a normal eight hour workday, I think it would be impossible for [the plaintiff] to be on task even 40% of the day. I base this on the appointments I have had with him as well as the reports from our

> therapists who note that the vast majority of the time he is in session with them, the time is spent redirecting him to task. . . .
>
> In my professional opinion, [the plaintiff] is not at all capable of sustaining employment.

Letter dated May 4, 2015, from Mark G. Kiefner, Ph.D. to Francis M. Jackson ("Kiefner Letter"), included as part of Exh. 1 (ECF No. 16-1) to Motion To Correct the Record ("Motion") (ECF No. 16).

The ALJ made no mention of the Kiefner Letter. *See* Record at 12-15.[4]

"[T]his court has held that, in circumstances in which a treating physician has offered a material opinion conflicting with the finding of an [ALJ], a failure to address that opinion warrants remand." *Prior v. Colvin*, No. 16-cv-00237-DBH, 2016 WL 7441610, at *3 (D. Me. Dec. 26, 2016) (rec. dec., *aff'd* Jan. 13, 2017) (citations omitted).[5]

---

[4] The Kiefner Letter was not included in the record; however, without objection, I granted the plaintiff's motion to correct the record to include it. *See* Motion; Defendant's Response to Plaintiff's Motion To Correct the Record ("Response to Motion") (ECF No. 18) at 2; Order (ECF No. 20). The commissioner attempted to qualify her lack of objection, stating that she did so "without conceding any error" and pointing out that the plaintiff had failed to provide a "transmission verification report" verifying that his counsel's May 2015 letter transmitting the Kiefner Letter had been faxed to the Office of Disability Adjudication and Review ("ODAR"). Response to Motion at 1-2. To the extent that she means to press the point that the plaintiff failed to demonstrate that he placed the Kiefner Letter before the ALJ, she cannot have it both ways. To state that she had no objection to the motion was to accept the plaintiff's representation that the Kiefner Letter should have been included in the record (and, thus, had been placed before the ALJ). *See* Motion at 1. In any event, I would have granted the motion over the commissioner's objection. Even assuming, *arguendo*, that the plaintiff's counsel failed to transmit the Kiefner Letter to ODAR, he referred to it in both a June 2015 letter to the ALJ that is of record and during the plaintiff's hearing before the ALJ. *See* Record at 117-18, 125-26. The ALJ, having been placed on notice of the existence of the Kiefner Letter and the plaintiff's counsel's mistaken belief that he had succeeded in transmitting it, could have sought to obtain it. *See Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir. 1991) ("Due to the non-adversarial nature of disability determination proceedings," the commissioner "has certain responsibilities with regard to the development of evidence[,]" which increase when, *inter alia*, "there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the [ALJ], without undue effort, to see that the gaps are somewhat filled – as by ordering easily obtained further or more complete reports[.]").

[5] While Dr. Kiefner is a neuropsychologist, not a physician, he is an "acceptable medical source" and hence, subject to the so-called "treating physician" or "treating source" rule, pursuant to which the commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also id*. §§ 404.1527(a)(1) (defining "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions"), 404.1527(a)(2) (defining a "treating source" as a claimant's "own acceptable medical source who provides [him or her], or has provided [him or her], with medical

The commissioner contended, in both her brief and at oral argument, that remand is unwarranted in this case because the Kiefner Letter is immaterial. *See* Defendant's Opposition to Plaintiff's Statement of Errors (ECF No. 19) at 12. Specifically, she argued that Dr. Kiefner had offered an opinion solely as to the plaintiff's status during the time he had known him and neither addressed his functional abilities during the relevant period nor offered an opinion that the plaintiff's impairments had caused him to end any specific employment. *See id*. She also cited *Lenczewski ex rel. Lenczewski v. Astrue*, No. 08-CV-0862-A, 2010 WL 2472548 (W.D.N.Y. June 15, 2010), for the proposition that an "ALJ is not required to rely on, or even consider, a physician's testimony when determining if a work attempt qualifies as unsuccessful." *Id*. (quoting *Lenczewski*, 2010 WL 2472548, at *4).

These points do not carry the day.

First, as the plaintiff's counsel noted at oral argument, the Kiefner Letter reasonably can be construed to bear generally on the plaintiff's condition following his 1992 car accident. Dr. Kiefner detailed both the nature of the plaintiff's 1992 brain injury and his impairments when he was initially treated, which included "significant difficulties with memory, organization, and executive functioning." Kiefner Letter at [1]. He then indicated, "During the time that we have known him, [the plaintiff] has *continued to demonstrate* severe impairments in memory, organization, attention, concentration, and executive functioning." *Id*. (emphasis added).

Second, for the same reason, Dr. Kiefner's opinion concerning the plaintiff's brain trauma-related difficulties in sustaining employment reasonably can be construed to extend to the 1997 and 1998 jobs at issue here.

---

treatment or evaluation and who has, or has had, an ongoing treatment relationship with [him or her]."); 404.1502(a)(2)(i) (defining an "acceptable medical source" as including "[a] licensed or certified psychologist at the independent practice level").

Third, the Kiefner Letter reasonably can be construed to cast the evidence on which the ALJ relied – the plaintiff's own descriptions of his series of short-term jobs in 1997 and 1998 and reasons for leaving them – in a different light. For example, the Kiefner evidence calls into question whether:

1. The plaintiff was employed at both Annie's Discount Cleaners and Kids, Inc., only because of "special conditions" – that his friend owned Annie's and that he worked at Kids, Inc., with his girlfriend. Record at 24; 20 C.F.R. § 404.1573(c) ("special conditions" include (i) the receipt of required "special assistance from other employees in performing [a claimant's] work[,]" (ii) "specially arranged circumstances" permitting a claimant to work, "for example, other persons helped [the claimant] prepare for or get to and from . . . work[,]" and (vi) providing a claimant "the opportunity to work despite [his or her] impairment because of family relationship, past association with [the claimant's] employer, or [the claimant's] employer's concern for [the claimant's] welfare.").

2. The plaintiff left his jobs at Hudson Trail Outfitters and Johnson's Landscaping Service for impairment-related reasons such as an inability to stay on task and follow through. *See* Record at 24 (plaintiff "was let go [from Hudson Trail Outfitters] because [he] couldn't make quota"), 25 (plaintiff "stopped [the Johnson's Landscaping Service job] because [he] got into a car accident while at work," and he recalled that "they told [him] it was too much of a risk for [him] to continue working there").

Fourth, and finally, *Lenczewski* is distinguishable in two respects. First, the quotation on which the commissioner relies pertains not to whether an ALJ may ignore an extant treating source opinion but, rather, whether an ALJ must "seek confirmation from a physician if the information received from employers [regarding asserted UWAs] is inconclusive or not available."

*Lenczewski*, 2010 WL 2472548, at *4.  Second, the claimant in *Lenczewski* did not complain that his treating physician's testimony was ignored but, rather, that "the ALJ erred in not finding the testimony of [his] treating physician . . . regarding [his] capacity to work to be sufficient evidence that each work attempt ended due to his impairment." *Id*.

Because the ALJ ignored a treating source opinion that reasonably can be construed as material to the question of whether the plaintiff's work in 1997 and 1998 constituted UWAs, remand is required.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 20th day of July, 2018.

                                                  /s/ John H. Rich III
                                                  John H. Rich III
                                                  United States Magistrate Judge